Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
*Proposed Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-614-ELG |
| | ) | (Chapter 11) |
| LP 5301 NH AVE LLC | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION FOR LEAVE TO USE CASH COLLATERAL**

Comes now LP 5301 NH Ave LLC ("LP 5301" or the 'Debtor"), by and through undersigned proposed counsel, pursuant to sections 363 of title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and moves this Honorable Court for leave to (i) use the cash collateral of EagleBank, post-petition; and (ii) provide adequate protection to EagleBank. In support thereof, the Debtor states as follows:

## I. Introduction

This is a fairly straightforward single asset real estate case where LP 5301 is seeking to use the chapter 11 process to (i) reorganize and satisfy a long-term debt obligation owed to EagleBank; and (ii) enhance the marketability of the apartment building located at 5301 New Hampshire Avenue, NW, Washington, DC 20011 (the "Property") by terminating the last handful of tenant leases and ensuring the building may be delivered—empty—to a new purchaser. The Debtor does not anticipate this case will prove either lengthy or contentious; the Property is worth comfortably

more than the sum of all secured and unsecured obligations. Still, LP 5301 is cognizant that ongoing use of rental proceeds—slim as they may be—requires leave of court and, too, that a single asset case proceeds best when unburdened by the temporal constraints invited by an absence of monthly payments.

Accordingly, the Debtor proposes to use the cash collateral of EagleBank in accord with a budget set forth *infra*, while also making monthly payments to EagleBank, in the sum of interest accruing at the pre-petition rate. (Insofar as the loan had neither matured nor been subjected to the invocation of any default remedies pre-petition, the non-default rate is the pre-petition rate in this case.) This will ensure a creditor is appropriately compensated for the use of its cash collateral, a secured lender is tendered the payments contemplated by section 362(d)(3) of title 11 of the United States Code, and LP 5301 has the operational runway necessary to efficiently and effectively reorganize.

## II. Standard

The Bankruptcy Code expressly contemplates the utilization of cash collateral by debtors-in-possession:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

Moreover, the Federal Rules of Bankruptcy Procedure allow for relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

## III. Argument: Cash Collateral Utilization Should be Permitted

Unsurprisingly, it takes cash to operate an apartment building. And while the Debtor's goal of using the bankruptcy process to empty the building for sale might be rapidly advanced if management simply abandoned the premises, allowed the utilities to be cut, and promoted the units as now having free wintertime refrigeration, there is a concern one or more outside parties might object to such a reorganizational arc. So the wiser course seems to be using chapter 11 to continue operation of the building (therein preserving legitimate going concern value) and using sections 365 and 543, in turn, to reject leases and facilitate a turnover of the formerly-demised premises.

As noted by the United States Court of Appeals for the Eleventh Circuit, "[a]dequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in such property," (ii) "providing … an additional or replacement lien to the extent that such … use … results in a decrease in the value of such entity's interest in such property," or

(iii) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. § 361. *See also*, *In re JKJ Chevrolet, Inc*., 190 B.R. 542, 545–46 (Bankr. E.D. Va. 1995), subsequently aff'd, 117 F.3d 1413 (4th Cir. 1997) ("Section 361 of the Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. Alternatively, the debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. Lastly, adequate protection may be provided by granting other relief that will result in the indubitable equivalent of the interest in the property.") (citing 11 U.S.C. § 361(3)).

Here, EagleBank is the sole secured creditor. *See* Deed of Trust, attached hereto as Exhibit A. The perfected security instrument includes, *inter alia*, an assignment of rents. *Id.* at p. 5. Those rents are theoretically in the sum of $10,481.00 per month, though $3,135.00 of that amount correlates to tenants who do not typically honor their contractual obligation to pay rent (or, in one instance, who have died and thereby ceased being in contractual privity with the Debtor), so the more accurate monthly sum is $7,346.00. *See* Rent Roll, attached hereto as Exhibit B.

Against $7,346.00 in revenue, the Debtor has $9,917.00 in monthly expenses *before* the payment of real estate taxes and the making of any debt service payments, as evidenced by the Debtor's monthly budget:

| | Dec-26 | Jan-27 | Feb-27 | Mar-27 |
|---|---|---|---|---|
| Rental Income | $7,346.00 | $7,346.00 | $7,346.00 | $7,346.00 |
| Total Income | $7,346.00 | $7,346.00 | $7,346.00 | $7,346.00 |
| | | | | |
| Real Estate Taxes (Prorated) | ($3,791.65) | ($3,791.65) | ($3,791.65) | ($3,791.65) |
| DC Water | ($1,385.00) | ($1,385.00) | ($1,385.00) | ($1,385.00) |
| Pepco | ($1,095.00) | ($1,095.00) | ($1,095.00) | ($1,095.00) |
| Republic Services | ($537.00) | ($537.00) | ($537.00) | ($537.00) |
| Management Fee | ($2,500.00) | ($2,500.00) | ($2,500.00) | ($2,500.00) |
| Insurance | ($2,400.00) | ($2,400.00) | ($2,400.00) | ($2,400.00) |
| Custodial Services | ($2,000.00) | ($2,000.00) | ($2,000.00) | ($2,000.00) |
| Total Expenses | ($13,708.65) | ($13,708.65) | ($13,708.65) | ($13,708.65) |
| | | | | |
| Net Revenue | ($6,362.65) | ($6,362.65) | ($6,362.65) | ($6,362.65) |

To be sure, the monthly loss is not the byproduct of a failing business but, rather, the reality of a cognizant decision to promote optimal sale metrics through conveyance of an empty building. Still, it is a loss that shows every dollar of EagleBank's cash collateral being applied toward the preservation of EagleBank's hard collateral. And this thusly encourages a universe where no adequate protection payment is needed.

The Debtor, however, is keen to make an adequate protection payment each month—both as a show of goodwill and as a means of satisfying the rigors of section 362(d)(3)(B) of the Bankruptcy Code. Based on the last pre-petition billing statement sent by EagleBank, the monthly interest accrual is $17,442.39. *See* Billing Statements, attached hereto as Exhibit C. While prior months show a higher sum, *id.*, the decrease is correlative to the Debtor having made payments against principal each month pre-petition and thereby decreased the gross obligation against which interest is calculated.

Adequate protection payments can be made *first*, out of an interest reserve being held by EagleBank (for this precise purpose—to use the Debtor's monies to pay interest), *see* Interest Statement, attached hereto as Exhibit D, and, *second*, out of a monthly contribution to be made by

the Debtor's equity holder. This contribution is not a loan and will not cause the Debtor's estate to incur any new liability. But the equity interest is prepared to both fund the monthly shortfall projected above and to also make cash collateral payments, all as a further show of good faith and an assertion of confidence in the reorganizational trajectory of this case.

## IV. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) permit the Debtor to use cash collateral; (ii) direct the Debtor to make monthly adequate protection payments of $18,201.97 to EagleBank, with said payments to be made *first* out of an interest reserve already held by EagleBank and, *second*, upon exhaustion of that interest reserve, by the Debtor, through a monthly contribution from equity; and (iii) afford such other and further relief.

Respectfully submitted,

Dated: November 24, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of November, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig